UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Crim. No. 19-10331-DPW |
| v. ) | |
| ) | |
| ANTONIO COSTA, ) | |
| ) | |
| Defendant ) | |

### GOVERNMENT'S MOTION FOR A DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. § 5K1.1 AND MEMORANDUM IN SUPPORT

Pursuant to Section 5Kl.l of the United States Sentencing Guidelines ("USSG"), the United States of America, through undersigned counsel, hereby moves the Court to downwardly depart when it sentences defendant Antonio Costa (hereinafter, "the defendant" or "Costa") on June 28, 2021. The government certifies that the defendant has provided substantial – indeed extraordinary – assistance in the prosecution of others. Put simply, without Costa's cooperation, there is no federal corruption case against former Fall River Mayor Jasiel F. Correia, II (hereinafter, "Correia").

Accordingly, for the reasons set forth below, the government recommends that the Court sentence Costa to three years of probation, the first 15 months to be served in home confinement, 200 hours of community service in Fall River, a $50,000 fine, $107,550 in forfeiture, and a $500 mandatory special assessment.[1]

---

[1] As the Court is aware, the parties also agreed that as a special condition of supervised release or probation, the defendant must cooperate with the IRS to resolve any outstanding tax issues. *See* Plea Agreement, ECF Dkt. No. 11 at 4.

I.   Advisory Sentencing Guidelines

At pages 2-3 of the plea agreement in this case, ECF Dkt. No. 11, the parties calculated the defendant's total offense level as 25, corresponding to a Guidelines Sentencing Range ("GSR") of 57-71 months. Probation has calculated the defendant's total offense level as 27, corresponding to a GSR of 70-87 months. *See* PSR at ¶¶ 35-60. The two-point difference in the parties' and Probation's calculations essentially stems from Probation's grouping of the two separate extortions (David Brayton and Brian Bairos) into a single group, and then the addition of two levels, pursuant to USSG § 2C1.1(b)(1), because the offense group involved more than one extortion. While the government of course stands by the guidelines calculation it agreed to in the plea agreement, it does not object to Probation's calculation. Moreover, regardless of which calculation the Court adopts, the government's sentencing recommendation will be the same.

II.   Costa's Role in the Offenses to Which He Pled Guilty and Relevant Conduct

Having presided over the trial of Correia, the Court is obviously well-aware of the defendant's role in the offenses of conviction. In short, Costa middled the Brayton bribe, keeping between $20,000 and $30,000 for himself, and he middled the Bairos bribe, keeping all of the approximately $77,550 Bairos paid (in cash andg marijuana)[2] in return for his non-opposition letter. The defendant also lied to federal agents when initially questioned about his role in the Brayton and Bairos extortions.

In addition to the above, the defendant testified at trial that he gave Correia a Rolex watch in return for the city's activation of a water line to a commercial building owned by Costa.

---

[2] *See* Trial Exhibit 139, at Boxes 294, 659, and 660 (reflecting approximately $67,550 in cash and marijuana payments in July 2018, plus $10,000 in cash at Cumberland Farms in March 2019).

He testified that he gave Correia approximately $3,900 in cash after Correia paid him a check in the same amount for office space Correia was leasing from Costa. The defendant also admitted that, prior to retaining counsel and agreeing to cooperate with the government, he lied under oath in the grand jury in connection with his involvement in SnoOwl. Finally, the defendant admitted that he was a long-time illegal marijuana dealer who sold large quantities of marijuana on which he did not pay all taxes owed on the proceeds.

III.     Costa's Substantial Assistance

The value of Costa's cooperation in this matter cannot be overstated. As noted above, without his cooperation, Correia's rampant corruption would not have come to light.

As a threshold matter, it is important to note that at the time Costa began cooperating with the government in approximately June 2019 [5/3/21 Correia Trial Tr. at 93] two of Correia's closest associates, Genoveva Andrade and Dave Hebert, both of whom could have inculpated Correia, had falsely denied any knowledge of wrongdoing by Correia in connection with the issuance of non-opposition letters, notwithstanding grants of statutory immunity. Similarly, Hildegar Camara had falsely denied any knowledge of wrongdoing by Correia in connection with the issuance of marijuana non-opposition letters.[3] As such, at the time Costa decided to cooperate, the government did not have anything resembling a chargeable corruption case, and it was running out of ways to make one.

While it is true that at the time Costa began cooperating, the government had learned from Brayton (who, prior to being immunized, had denied paying a bribe for a non-opposition letter) that Brayton had paid $100,000 to Costa in return for a non-opposition letter from Correia,

---

[3] Camara's denials regarding the Brayton and Bairos extortions were the bases of the two false statement counts to which he pled guilty. *See* 5/4/21 Correia Trial Tr. at 173-174.

3

Brayton had no direct personal knowledge as to what happened to the $100,000 after he gave the check to Costa. As such, Brayton's testimony alone was not sufficient to charge Correia with the Brayton extortion. Further, Brayton had no knowledge of any potential corruption involving any other marijuana vendors in Fall River.

In fact, it was not until Costa's cooperation that the government first learned that Correia had received $70,000 - $80,000 in cash for the Brayton letter. And it was not until Costa's cooperation that the government first learned about the Bairos extortion. Moreover, it was only because of Costa's cooperation that the government expanded its investigation to include all of the marijuana vendors who had been issued non-opposition letters in Fall River, including, in addition to Bairos, Matthew Pichette and Charles Saliby.

After making the decision to cooperate, Costa met with the government on several occasions. In August 2019, after multiple hours-long meetings with the government, Costa testified in the grand jury. That testimony was a substantial factor in the return of a Second Superseding Indictment ("SSI") against Correia (and Andrade) alleging a pervasive and brazen corruption scheme, including the extortions of Brayton, Bairos, Pichette, and Saliby (all of which were directly or indirectly provable as a result of Costa's cooperation). In addition, in September 2019, Camara pled guilty to both the Brayton and Bairos extortions, as well as to making false statements in connection with those extortions. *See United States v. Camara*, 19-10333-DPW, at ECF Dkt. No. 2. Accordingly, Costa's cooperation led to the conviction of Camara, an appointed official in Fall River. Without Costa's cooperation, Camara was not chargeable.[4]

---

[4] Although Costa did not have specific information inculpating David Hebert in official corruption related to Correia, it should be noted that Hebert also decided to plead guilty – in September 2019 – not long after Costa began cooperating.

Between the return of the SSI in September 2019 and the commencement of trial in April 2021, Costa continued to meet with the government whenever he was asked and continued to provide truthful information.

At the Correia trial, in addition to Costa, the testimony of the following witnesses was a direct or indirect result of Costa's cooperation: (1) Hil Camara; (2) Brian Bairos; (3) Matthew Pichette; (4) John Perry; (5) Michael Khoury; (6) Matthew Pichette; and (7-9) Charles Saliby, his father, and his sister. Accordingly, Costa's cooperation led, either directly or indirectly, to the testimony of 10 witnesses in the corruption portion of the case.

Regarding the testimony of Costa himself, the jury's verdict makes clear that they found it credible.[5] The jury's implicit finding that Costa's testimony was credible was the right one, for essentially the reasons the government argued in its closing, namely, that Costa's testimony was corroborated by the testimony of several other witnesses, and the bank and phone records in the case. It should also be noted that Costa's trial testimony was consistent with what he had been telling the government since he began cooperating in June 2019.

In sum, had Costa chosen not to cooperate, one of the most consequential corruption cases in this district in recent memory would not have been prosecuted, and Correia would almost certainly still be in a position of public trust. Because of the defendant's cooperation, however, and the resulting prosecution and conviction of Correia, the city of Fall River has been able to begin to move on from Correia's corrupt tenure.

---

[5] The government is mindful of this Court's comment at a recent hearing in the Andrade matter that it intended to closely review Costa's testimony for truthfulness. While there are some inconsistencies in the dollar amounts and sequences of certain events about which Costa testified, the testimony was, at core, truthful. With respect to the "Batman" Rolex counts on which the jury acquitted Correia, that acquittal appears more likely to have stemmed from legal deficiencies in those counts related to the timing of the gift, *see United States v. Correia*, 18-10364-DPW, ECF Dkt. No. 230-1, rather than a rejection of Costa's testimony.

IV.     Sentencing Recommendation

The government arrived at its sentencing recommendation in this case after much deliberation and consideration of all of the factors set forth in 18 U.S.C. § 3553, including the nature and circumstances of the offenses, the defendant's background (more fully discussed in the PSR and the defendant's sentencing memo, ECF Dkt. No. 25 at 3-4), the need to promote respect for the rule of law, and specific and general deterrence.

The crimes committed by the defendant were serious and significantly harmed the government and citizens of Fall River.  Those crimes deserve punishment.  However, the nature and seriousness of the defendant's crimes must be balanced against the value of his cooperation, and the overwhelming public interest in exposing and convicting corrupt elected officials like Correia.

As this Court well knows, federal criminal corruption cases are notoriously difficult to make and to prove.  Such cases require the cooperation of individuals like Costa.  As such, it is critically important to incentivize cooperation like Costa's by imposing a sentence that reflects the true value of that cooperation.  It is equally important for this Court's sentence to send a message that encourages individuals with inculpatory information against corrupt elected officials to cooperate, especially those facing their own criminal exposure.  The government believes its recommendation here simultaneously reflects the seriousness of the defendant's offenses, while also ensuring that like-situated individuals in future corruption cases do not hesitate to come forward.

Ultimately, the government's recommendation includes a substantial period of home confinement, which, while obviously not incarceration, is still a significant restraint on Costa's liberty.  In addition, the government's recommendation includes 200 hours of community service

to enable the defendant to continue to make amends for the harms he caused the city of Fall River.[6] The parties also agree that the defendant should forfeit $107,550,[7] and the government is recommending a fine of an additional $50,000.

Accordingly, for all the reasons set forth herein, the government moves for a downward departure and recommends that the Court sentence Costa to three years of probation, the first 15 months to be served in home confinement (with a condition allowing the defendant to work and perform any community service ordered by the Court), 200 hours of community service in Fall River, a $50,000 fine, $107,550 in forfeiture, and a $500 mandatory special assessment. Pursuant to 18 U.S.C. § 3553, such a sentence is sufficient, but not greater than necessary.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By: /s/ Zachary R. Hafer
ZACHARY R. HAFER
DAVID G. TOBIN
Assistant U.S. Attorneys

---

[6] It is the government's understanding that if the Court imposes community service, Probation will work with the defendant to identify appropriate opportunities for such service.

[7] Although the plea agreement contemplates a forfeiture range of $72,000 – $95,000, in light of the trial evidence, the parties now agree that the defendant should forfeit $107,550, the best estimate of the total amount of all proceeds Costa received from the David Brayton and Brian Bairos extortions. In arriving at that number, the parties attributed to Costa the higher of the two amounts Costa testified to regarding his share of the Brayton extortion, i.e., $30,000. In addition, as noted earlier, the parties attributed $77,550 to Costa from the Bairos extortion.

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing.

/s/ *Zachary R. Hafer*
Zachary R. Hafer
Assistant U.S. Attorney

Date:   June 21, 2021